UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
SHREVEPORT DIVISION

| | |
|---|---|
| DOMINIQUE MORELAND | CIVIL ACTION NO. 25-cv-976 |
| VERSUS | JUDGE TERRY A. DOUGHTY |
| AUDRIUS REED ET AL | MAGISTRATE JUDGE HORNSBY |

# REPORT AND RECOMMENDATION

## Introduction

Dominique Moreland ("Plaintiff") was charged in state court with obstructing a warrant. Attorney Audrius Reed ("Reed") represented Plaintiff in the criminal case for several months. Plaintiff eventually fired her. The prosecutor later dismissed the charges while Plaintiff was represented by another attorney.

Plaintiff filed this legal malpractice action against Reed and Audrius M. Reed Attorney at Law, LLC. She alleges that Reed is liable to her because Reed did not get the charges dismissed earlier in the proceedings. Reed responded to the original complaint with a motion to dismiss, Plaintiff was allowed to file a First Amended Complaint, and Reed has now filed a second Motion to Dismiss (Doc. 30), now before the court, that challenges the First Amended Complaint. For the reasons that follow, it is recommended that the motion be granted.

## Rule 12(b)(6) Burden

Reed moves to dismiss the complaint based on Fed. R. Civ. Pro. 12(b)(6) for failure to state a claim on which relief may be granted. To avoid dismissal, Plaintiff's complaint

must plead enough facts to "state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S.Ct. 1937, 1949 (2009) (quoting Bell Atl. Corp. v. Twombly, 127 S.Ct. 1955 (2007)). The factual allegations must "raise a right to relief above the speculative level." Twombly, 127 S.Ct. at 1965. "[P]ro se complaints are held to less stringent standards than those drafted by lawyers," but even in a pro se complaint "conclusory allegations or legal conclusions masquerading as factual conclusions will not suffice to prevent a motion to dismiss." Taylor v. Books A Million, Inc., 296 F.3d 376, 378 (5th Cir. 2002).

**The Allegations**

Plaintiff, a citizen of Texas, filed this civil action in federal court against Reed, a citizen of Louisiana, based on diversity jurisdiction. The operative complaint is Plaintiff's First Amended Complaint (Doc. 48), which totally restated her claims. Plaintiff responded to the current motion to dismiss with another motion for leave to amend her complaint, but the court denied that request by an earlier order. The relevant facts set forth in the 60-page First Amended Complaint, which must be accepted as true for current purposes, are summarized below.

Plaintiff moved into 1054 ½ Wilkinson Street in Shreveport on October 1, 2023. Several days later, on October 17, two Shreveport police officers and a deputy city marshal attempted to enforce a bench warrant for a man named Craig Knoll at Plaintiff's residence. The bench warrant related to charges of driving under suspension, theft of a catalytic converter, and parking violations. Mr. Knoll had never lived at that address and was not known to Plaintiff. First Amended Complaint, Doc. 48 at ¶ 8.

The officers claimed to possess an arrest warrant and insisted that they needed to search Plaintiff's home to locate Mr. Knoll. Plaintiff exercised her right to refuse consent to a search, but the officers forced their way inside and pushed Plaintiff to her floor. ¶ 9. A private investigator, Mr. Knoll himself, and the property management company later verified that Mr. Knoll had never lived at the address or been listed as a resident. ¶ 10. Plaintiff later filed a civil rights suit in this court against the police officers and several other defendants. Moreland v. Kolb, 24-cv-1424. ¶ 13.

Plaintiff was arrested on October 17, 2023 and charged with obstruction of court orders. Plaintiff met with attorney Reed the next week, and they spoke for over an hour about the incident. Plaintiff expressed concern about the impact on her business, Highway Hero Driving Academy, and concerns about her personal safety. ¶ 16. Reed explained to Plaintiff that the charge could be dismissed only if the facts Plaintiff provided about her arrest were accurate. Reed assured Plaintiff that she would obtain and review the evidence and work to have the charges dropped. ¶ 17. Plaintiff then began having difficulty contacting Reed by phone, so she resorted to Facebook. After that exchange, Reed sent Plaintiff an invoice, and Plaintiff paid it. ¶¶ 17-21.

Reed appeared with Plaintiff at a November 15, 2023 hearing. During that hearing, Reed received the police report (which alleged that Plaintiff had a knife and obstructed a warrant, facts that Plaintiff challenges), but Plaintiff was unaware that Reed had been handed this discovery material. ¶ 22. After the hearing, Reed talked to Plaintiff in the lobby and presented her with a proposed plea bargain that would result in a $300 fine, court costs, and no jail time. Plaintiff rejected the offer and told Reed to let her know once she

received the discovery in the case. Reed agreed to do so, but she did not tell Plaintiff that she had received the police report at the hearing. ¶ 23.

A few months later, after minimal communication between attorney and client, Plaintiff again reached out by Facebook on the day before her next court date. Plaintiff asked for a copy of the warrant, the police report, and the body camera footage. She also posed two legal questions. Reed responded by telling Plaintiff to stop contacting her by Facebook and to communicate only by phone or email. Reed said that discovery would be provided whenever there was discovery to be given. ¶¶ 25-26.

Plaintiff had her second court date on February 21, 2024. Reed once again posed the $300 fine plea offer, and Plaintiff again said no and requested the discovery. Reed soon afterward sent Plaintiff the documents (presumably the police report) that she had been in possession of for 98 days. ¶ 27. Plaintiff alleges that the discovery obtained by Reed earlier in December 2023 proved that the warrants referenced in the police report were "bench warrants, not arrest warrants or search warrants, and that the warrants did not have Ms. Moreland's address on them." ¶ 28.

Plaintiff complains that Reed ran afoul of ethical requirements by communicating the plea offer to her without fully informing her of all the material facts relevant to the decision. Plaintiff states that, even though she rejected the plea offers, she suffered significant harm as a result of Reed's lack of disclosure of what Plaintiff calls exculpatory evidence because there was a prolonged prosecution and Plaintiff lost economic opportunities and suffered emotional distress and anxiety associated with the proceeding. ¶¶ 29-32.

Plaintiff was hired in May 2024 to work at Austin High School in Houston, but she was then notified that the teaching job, which paid $94,000 a year plus benefits, was not available to her because the school district's policy was to not hire any applicant with current open criminal cases. ¶ 37.

Plaintiff took it upon herself to investigate her own case in an effort to prepare Reed for the next court appearance. Plaintiff alleges that each attempt to review the police report and other documents triggered an overwhelming emotional and physical response where she would burst into tears and suffer headaches and nausea. ¶ 38. Plaintiff began to focus on the warrants listed in the police report and requested copies of them as well as body camera footage from the arresting officers. Reed responded that a request for the video footage had been made when she filed a motion for discovery on November 15, 2023. Reed and Plaintiff quibbled over whether some numbers referenced in the police report were case numbers or warrant numbers. ¶¶ 39-43.

Plaintiff went, on her own, to see the city marshal and ask about the body camera footage. The marshal stated that he had viewed the footage, but he would not give it to Plaintiff. An internal affairs supervisor said the same. Plaintiff asked the clerk of court about the warrants, and he provided her with warrants that corresponded with the numbers mentioned in the police report. The warrants had addresses listed in Bossier and Minden. ¶¶ 45-49.

Plaintiff obtained copies of the warrants on July 2, 2024. On July 4, she emailed Reed and told her there would never be a plea deal agreement, demanded that Reed file some motions that Plaintiff had prepared, requested a meeting of about three hours, and

made other demands. Reed responded that the $1,500 that Plaintiff had paid was for pretrial services and did not cover trial services. If Plaintiff wanted to go to trial, she must pay Reed an additional $5,000. Reed added that she would charge $250 per hour to review the evidence that Plaintiff had obtained. Plaintiff stated that she was "devastated and bewildered" by Reed's response, especially after "retraumatizing herself in pursuit of the truth" and not being met with "validation or support," which left her "nervous, feeling abandoned, disrespected, and emotionally shattered." ¶ 50-55.

Plaintiff later told Reed that she had voice recordings and other proof that the body camera footage existed. (This allegation suggests that Plaintiff may have recorded her meetings with the marshal and internal affairs officer.) Plaintiff sent multiple emails to Reed, to which Reed did not respond, and she filed the flash drives of her voice recordings in the state criminal case. ¶¶ 56-57. Plaintiff complains that financial demands made by Reed were unethical. She states that she paid Reed $1,500 in three payments ($750, $375, $375), and she took issue with how Reed billed against those retainer payments. ¶¶ 58-60. Plaintiff sent Reed an email on July 8, 2024, after Reed had been representing her for 236 days, lodged certain complaints, made certain demands, expressed disappointment, and ultimately stated that Reed "was officially terminated as her counsel." ¶¶ 61-62.

Reed sent a response that addressed several issues. Reed noted that the police department was backed up in releasing evidence such as the body camera footage. Plaintiff

takes issue with this claim, despite the existence of published news articles about the backlog. Plaintiff calls the articles "false propaganda." ¶¶ 64-65.[1]

Reed made an oral motion for discovery on November 15, 2023.[2] Reed did not make a second motion, oral or written, for discovery, did not submit a public records request, and did not file any other motions of the sort that Plaintiff believes she should have filed. ¶ 66. Plaintiff next dedicates several long paragraphs to complaints about the Shreveport Police Department's "differential treatment" and inconsistent practices with respect to producing video footage relevant to criminal or civil rights cases. She attributes the inconsistencies to false claims by the police department, which she allegedly disproved on her own, and she faults Reed for not zealously investigating the facts and doing the same on her behalf. ¶¶ 67-71.

Reed emailed Plaintiff on July 11, 2024 and provided a billing statement and itemized account ledger. Reed stated that she had completed $984.50 worth of work, but she was going to return to Plaintiff the entire $1,500 retainer. Reed repeated her earlier statement that the police department was back up with providing video discovery and said that she had been unable to get body camera footage for her other clients as well. She also "finally gave Ms. Moreland the warrants." Plaintiff later received a $1,500 refund check.

---

[1] Many of the criminal cases in federal court rely on video footage from police body and patrol car cameras. There has long been a problem with extraordinary delays in the ability of federal prosecutors to obtain that footage from the Shreveport Police Department. Plaintiff may not believe it, but it is a fact. For purposes of this motion, however, her assertions to the contrary must be accepted as true.

2 Plaintiff asked to file a second amended complaint that would modify this allegation to deny that Reed ever filed any request for discovery. That motion for leave has been denied.

¶¶ 72-73. Plaintiff alleges that Reed "actively concealed work she performed" and "was in cahoots with the State and/or the City of Shreveport employees to cover up what was done to Ms. Moreland." ¶ 73.

Plaintiff began representing herself at a July 17, 2024 court date. She filed motions and attempted to get a dismissal from the prosecutor, but she was unsuccessful. She then hired a new attorney, who appeared at a September 19, 2024 court date. Plaintiff remained heavily involved in her defense, and the two soon filed various motions such as for speedy trial and to issue subpoenas to the police department and marshal. After four court appearances, with the final on January 28, 2025, new counsel advocated for dismissal or an immediate trial date. The prosecutor requested one final court date before a trial date was set. The charge against Plaintiff was dismissed on February 18, 2025, a month before the next scheduled "further proceedings" court date and two months before a scheduled April 7, 2025 trial. ¶¶ 75-76.

The remainder of the First Amended Complaint consists of a rehashing of facts already alleged and setting forth various counts for relief. The counts include attorney abandonment, legal malpractice, violation of constitutional rights such as the Sixth and Fourteenth Amendments, breach of fiduciary duty, constructive fraud, duress, negligent infliction of emotional distress, financial harm, reputational harm, time and opportunity costs, and loss of time and trust in the justice system. Plaintiff asks for compensatory damages, attorney's fees, various declarations with respect to professional and fiduciary duties, an injunction against future acts of legal malpractice, a referral to various bar and prosecutorial agencies, and virtually every other form of relief that could be imagined.

**Constitutional Law Claims**

Plaintiff's First Amended Complaint asserted constitutional law claims against Reed based on the Sixth Amendment right to effective counsel, the Fourteenth Amendment right to due process, and the like. The only basis to seek damages for such claims is 42 U.S.C. § 1983, but "private attorneys, even court-appointed attorneys, are not official state actors, and generally are not subject to suit under section 1983." Mills v. Criminal Dist. Court No. 3, 837 F.2d 677, 679 (5th Cir. 1988). Plaintiff concedes that these claims "should be dismissed because constitutional provisions require state action and do not impose direct liability on private counsel" even though she contends that the related facts may be relevant to her malpractice claims. Accordingly, it is recommended that all Section 1983 or constitutional claims be dismissed.

**Legal Malpractice**

To establish a valid legal malpractice claim under Louisiana law, a plaintiff must prove: "(1) the existence of an attorney-client relationship; (2) negligent representation by the attorney; and (3) loss caused by that negligence." MB Indus., LLC v. CNA Ins. Co., 74 So.3d 1173,1184 (La. 2011). "The proper method of determining whether an attorney's malpractice is a cause-in-fact of damage to his client is whether the performance of that act would have prevented the damage." Teague v. St. Paul Fire & Marine Ins. Co., 10 So.3d 806, 821 (La. App. 1 Cir. 2009). "Thus, simply establishing that an attorney was negligent, whether based upon the failure to conform to an ethical rule or some other standard, would not be sufficient to state a cause of action for legal malpractice." Id.

The Louisiana Supreme Court addressed the requirement of damages in Braud v. New England Ins. Co., 576 So.2d 466 (La. 1991) in the context of discussing when a legal malpractice claim reaches the level of a cause of action that triggers commencement of the limitations period. The Court stated: "The mere breach of a professional duty, causing only nominal damages, speculative harm, or the threat of future harm—not yet realized—does not suffice to create a delictual action." Id. at 468. "Until the client suffers appreciable harm as a consequence of his attorney's negligence, the client cannot establish a cause of action for malpractice." Id. There must be "appreciable and actual harm flowing from the attorney's negligent conduct" to establish a cause of action. Id.

"[I]f a malpractice plaintiff offers only a speculative theory of loss causation, the defendant is entitled to judgment as a matter of law." Colonial Freight Sys., Inc. v. Adams & Reese, L.L.P., 524 Fed. Appx. 142, 144 (5th Cir. 2013) (applying Louisiana law). An example of a claim that was too speculative to survive is found in Thibodeaux v. Braud & Gallagher, L.L.C., 109 So.3d 501 (La. App. 4 Cir. 2013). The plaintiffs in Thibodeaux hired the defendant attorneys to represent them in a medical malpractice case. The medical malpractice defendants raised a timeliness defense. The district court agreed and dismissed the case. The plaintiffs sued their original attorneys and hired replacement counsel. Meanwhile, the medical malpractice case worked its way to the Louisiana Supreme Court, which ultimately decided that the medical malpractice suit was timely after all. The plaintiffs had sued their former attorneys for legal malpractice on the theory that the attorneys failed to raise the appropriate arguments in the trial court to defeat the timeliness defense without the necessity of the ensuing appeal and its related expenses.

The appellate court in Thibodeaux said: "We cannot accept the inference that the trial judge would necessarily have accepted the merits of an argument which ultimately prevailed in the Supreme Court" particularly given differences of opinion among judges with respect to the issues. Thibodeaux, 109 S.3d at 504. Of particular relevance to this case, the court also stated that due to "the vagaries inherent in litigation, we cannot suppose that a single ineffective (or even unsound) argument in the trial court can constitute actionable negligence when the party ultimately prevails on the very issue to which the ineffective argument was addressed." Id.

Plaintiff alleges that if Reed had been more active in pursuing discovery, particularly the warrants and video recordings, Reed could have convinced the district attorney to dismiss the charges earlier in the proceedings and avoided the prolonged nature of the case and Plaintiff's loss of a job opportunity. Even accepting Plaintiff's factual allegations as true, the association between the alleged acts of negligence and causation of damage is too speculative to state a claim on which relief may be granted. Just as it was too speculative in Thibodeaux, given the "vagaries inherent in litigation" to suppose that a better argument in the trial court might have persuaded the trial judge to rule in the plaintiffs' favor, it is too speculative to say that better efforts by Reed earlier in the case would have resulted in Reed (a) obtaining the video footage and (b) being able to convince the DA to drop the charges several months earlier than when the charges were finally dropped.

Even after Plaintiff retained new counsel, it took several months and an impending trial date (most often the point where such matters come to a head) before the charges were

dropped. It is simply too speculative, as a matter of law, to assume that the best criminal defense attorney in the state could have obtained dismissal of the charges earlier if he or she had pursued discovery more aggressively. Furthermore, Plaintiff has not cited a single case from Louisiana or any other jurisdiction that has recognized a delay-based legal malpractice claim against a criminal defense attorney where, in the end, all charges against the client were dismissed. For these reasons, all of Plaintiff's claims for legal malpractice, negligence, breach of fiduciary duty, constructive fraud, and the like should be dismissed. Each of them requires a legal causation or proximate cause element, and it is not met in this case.

**Negligent Infliction of Emotional Distress**

The "outer boundaries of the law are not yet visible in Louisiana when dealing with emotional distress claims in legal malpractice cases," but "there must be proof that the defendant violated a legal duty owed to the plaintiffs, who must also bear the heavy burden of proving outrageous conduct by the defendant." Jenkins v. Washington & Wells, L.L.C., 86 So. 3d 666, 671 (La. App. 2d Cir. 2012). Plaintiff asserts a separate claim for negligent infliction of emotional distress, which can apply outside the legal malpractice setting. A plaintiff who asserts such a claim must establish the ordinary elements of a tort claim, including cause-in-fact and that the defendant's substandard conduct was a legal cause of the plaintiff's injuries. Spencer v. Valero Ref. Meraux, L.L.C., 356 So.3d 936, 949 (La. 2023). The plaintiff must also prove "the especial likelihood of genuine and serious mental distress, arising from the special circumstances, which serves as a guarantee that the claim is not spurious." Id. at 950. Generalized fear or mere inconvenience is insufficient. Id.

Plaintiff does allege that she was personally so fragile as to basically fall apart mentally if she had to so much as look at the police report related to this case, but she has not alleged facts that establish that Reed's alleged substandard conduct was a recognizable legal cause of her emotional state. If being slow to obtain discovery or not getting charges dismissed in a criminal case at the earliest possible moment gives rise to a viable tort claim, then the bankruptcy courts will soon be flooded with criminal defense lawyers seeking relief from the many judgments against them. And Reed's actions, although described in the complaint as lacking, were not so terrible as to be legally outrageous. Jenkins, 86 So.3d at 672 (attorney's "negligence in filing plaintiffs' writ application with the supreme court one day late is not 'outrageous' conduct"). This claim, as well as any of the other various theories that Plaintiff bases on the same facts, should be dismissed.

Accordingly,

It is recommended that Reed's Motion to Dismiss (Doc. 30) be granted and that all of Plaintiff's claims be dismissed with prejudice for failure to state a claim on which relief may be granted.

**Objections**

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen (14) days from service of this report and recommendation to file specific, written objections with the Clerk of Court, unless an extension of time is granted under Fed. R. Civ. P. 6(b). A party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.

Counsel are directed to furnish a courtesy copy of any objections or responses to the District Judge at the time of filing.

A party's failure to file written objections to the proposed findings, conclusions and recommendation set forth above, within 14 days after being served with a copy, shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. See Douglass v. U.S.A.A., 79 F.3d 1415 (5th Cir. 1996) (en banc).

THUS DONE AND SIGNED in Shreveport, Louisiana, this 17th day of August, 2026.

Mark L. Hornsby
U.S. Magistrate Judge